UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

COLIN WASHINGTON,

                            Plaintiff,

                -against-

CITY OF NEW YORK, Police Detective Ericks
Rodriguez, individually, and John and Jane Doe
Officers 1-10, individually,

                            Defendants.

------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

## **NATURE OF THE ACTION**

1.      This is an action to recover money damages arising out of the violation of Plaintiff Colin Washington's ("Mr. Washington") rights under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

## **JURISDICTION AND VENUE**

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). The incident in question took place in this District in New York County.

## JURY DEMAND

5.     Mr. Washington demands a trial by jury in this action pursuant to
Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6.     Mr. Washington lives in New York County.

7.     Defendant City of New York was and is a municipal corporation duly
organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant City of New York maintains the New York City Police
Department (hereinafter "NYPD"), a duly authorized public authority and/or police
department, authorized to perform all functions of a police department as per the
applicable sections of the aforementioned municipal corporation, the City of New
York.

9.     Defendant NYPD Detective Ericks Rodriguez, Shield No. 4675 of the
30th Precinct ("Detective Rodriguez"), and Defendant John and Jane Doe Officers 1-
10 (collectively "Defendant Doe Officers"), at all times relevant herein, were duly
sworn officers, employees and agents of the NYPD and were acting under the
supervision of said department and according to their official duties.   Detective
Rodriguez and Defendant Doe Officers are sued in their individual capacities.

10.     That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11.     Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

**Predicate Facts Relating To The Instant Lawsuit**

12.     Mr. Washington worked at Joe's Crab Shack in Harlem in 2012.  Mr. Washington presently continues to work at Joe's Crab Shack at its East Elmhurst location.

13.     In 2012, 30th Precinct police officers—some of whom are Defendants in this case—wrongfully arrested Mr. Washington for possession of marijuana ("the 2012 wrongful arrest").

14.     Mr. Washington was not charged for the offense that was the subject of the 2012 wrongful arrest.

15.     Upon being released from custody in relation to the 2012 wrongful arrest, Mr. Washington returned to the 30th Precinct to collect his personal effects.

16.     The police officer who attended to Mr. Washington in the 30th Precinct

on that day in 2012 ("the 2012 attending officer") reacted angrily and with profanity when he saw Mr. Washington enter and asked him, in sum and substance, how he had gotten out.

17.     Approximately ten to twelve other 30th Precinct police officers were in the vicinity at the time of this exchange.

18.     Mr. Washington told the 2012 attending officer that no charges had been filed against him and that he was considering filing a civil rights claim for false arrest.

19.     The 2012 attending officer became even angrier, stating, in sum and substance, that if Mr. Washington filed a civil rights claim, he should plan on staying out of the 30th Precinct or else he should expect repercussions.

20.     The 2012 attending officer told Mr. Washington to get out of the building in impolite terms.

21.     A number of the NYPD officers present chimed in with their own poor opinions of Mr. Washington as the 2012 attending officer unceremoniously told Mr. Washington to leave.

22.     Mr. Washington filed a civil rights claim relating to the 2012 wrongful arrest.

23.     Mr. Washington obtained a settlement from the City.

**Facts Relating To The Incident Giving Rise To The Instant Lawsuit**

24.     On information and belief, on or around October 13, 2013, two

4

individuals reported being robbed in the 30th precinct by a man with a firearm.

25.     No arrests were immediately made and, on information and belief, the police had no promising leads.

26.     On or around October 15, 2013, Mr. Washington, whose work and family required him to be in the 30th Precinct regularly, encountered Defendant Doe Officer 1 while walking on a New York City sidewalk.

27.     Defendant Doe Officer 1 saw and recognized Mr. Washington.

28.     Defendant Doe Officer 1 made it a point to approach Mr. Washington and make rude remarks to him to the effect that Defendant Doe Officer 1 was surprised to see Mr. Washington walking free because Mr. Washington belonged in jail.

29.     On or about October 17, 2013, Defendant Doe Officers 2 and 3 visited Mr. Washington's apartment.

30.     Mr. Washington's wife was at home but Mr. Washington was not.

31.     On or about October 22, 2013, Defendant Doe Officers 2 and 3 visited Mr. Washington's home again.

32.     This time Mr. Washington was home and he let Defendant Doe Officers 2 and 3 inside.

33.     Defendant Doe Officers 2 and 3 told Mr. Washington that they had a warrant for his arrest relating to the robbery of two individuals in the 30th Precinct.

34.     In connection with Mr. Washington's arrest, Defendant Doe Officers 2 and 3 unreasonably searched Mr. Washington's apartment without his permission, without exigent circumstances and, on information and belief, without a search warrant.

35.     Defendant Doe Officers 2 and 3 took Mr. Washington to the precinct.

36.     Defendant Detective Rodriguez and Defendant Doe Officer 4 met Mr. Washington at the precinct.

37.     Mr. Washington did not recognize Defendant Detective Rodriguez or Defendant Doe 4.

38.     Defendant Detective Rodriguez told Mr. Washington that Defendant Detective Rodriguez recognized him from before.

39.     Defendant Detective Rodriguez told Mr. Washington that the police had identified him and located him through facial recognition.

40.     On information and belief, Defendant Detective Rodriguez was referring to the NYPD's use of facial recognition software.

41.     On information and belief, after Defendant Doe Officer 1 saw and harassed Mr. Washington in the street on or around October 15, Defendant Doe Officer 1 and other Defendants secured surveillance footage of Mr. Washington near that location, falsely stated that it placed Mr. Washington at a location sufficiently near the scene of the robberies to meaningfully suggest involvement.

42.     Then, on information and belief, Defendants ran facial recognition software on the surveillance footage in order to identify Mr. Washington as the perpetrator of the robberies.

43.     Defendant Detective Rodriguez and Defendant Doe Officer 3 put Mr. Washington in a six-man lineup for the robbery victims to view.

44.     The six-man lineup was simultaneous and not sequential.

45.     Defendants told Mr. Washington to sit in the middle.

46.     Mr. Washington looked notably different than the other five men in the lineup.

47.     Specifically, Mr. Washington at 5'6" was notably shorter than the other men.  One man appeared to be close to 6 feet tall.

48.     In addition, Mr. Washington's skin was notably lighter than the skin of the other men in the lineup.

49.     The two robbery victims allegedly viewed the lineup.

50.     Defendants stated that one of the robbery victims ("Robbery Victim 1") reliably identified Mr. Washington as the perpetrator.

51.     In light of the fact that the eventual Complaint filed against Mr. Washington, Robbery Victim 1 explained that Robbery Victim 1 was robbed "from behind," on information and belief, Robbery Victim 1 did not identify Mr. Washington at all or failed to make an independent and reliable identification of Mr.

Washington.

52.     On information and belief, the second robbery victim ("Robbery Victim 2") did not identify Mr. Washington.

53.     Defendants transmitted the false and incomplete statement about Robbery Victim 1's positive identification of Mr. Washington to the District Attorney.

54.     Mr. Washington was charged with Robbery in the Second Degree.

55.     Mr. Washington asserted his right to testify before the grand jury.

56.     Mr. Washington was incarcerated approximately five days pending the grand jury hearing.

57.     On October 28, 2013, a state court judge released Mr. Washington on his own recognizance because the government had not submitted Mr. Washington's case to a grand jury.  See N.Y. C.P.L. § 180.80.

58.     Mr. Washington was never indicted.

59.     On February 26, 2014, a state court judge granted the prosecutor's motion to dismiss the charge against Mr. Washington.

60.     Mr. Washington suffered damages as a result of Defendants' actions, including deprivation of liberty, damage to his reputation and emotional trauma.

**Facts Relating To Policies, Customs Or Practices Of The City Of New York**

61.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation,

the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

62. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's IAB and the CCRB) that many NYPD officers, including the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

63. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

9

> [i]nformal inquiry by the [C]ourt and among judges of this
> [C]ourt, as well as knowledge of cases in other federal and
> state courts, has revealed anecdotal evidence of repeated,
> widespread falsification by arresting police officers of the
> [NYPD] . . . [T]here is some evidence of an attitude among
> officers that is sufficiently widespread to constitute a
> custom or policy by the [C]ity approving illegal conduct of
> the kind now charged.

Colon v. City of N.Y., Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y.

November 25, 2009).

64.     Former Deputy Commissioner Paul J. Browne, as reported in the press

on January 20, 2006, stated that NYPD commanders are permitted to set

"productivity goals," permitting an inference of such a custom or policy encouraging

deprivations of individuals' constitutional rights in cases such as this one.

65.     Defendant City of New York is thus aware that its improper training and

customs and policies have often resulted in a deprivation of individuals' constitutional

rights.  Despite such notice, Defendant City of New York has failed to take corrective

action.    This failure caused Individual Defendants in this case to violate Mr.

Washington's constitutional rights.

66.     Moreover, on information and belief, Defendant City of New York was

aware, prior to the incident, that the Individual Defendants lacked the objectivity,

temperament, maturity, discretion and disposition to be employed as police officers.

Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

67.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

68.     All of the aforementioned acts deprived Mr. Washington of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

69.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

70.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

71.    As a result of the foregoing, Mr. Washington is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

72.    Mr. Washington repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

73.    Defendants, by their conduct toward Mr. Washington alleged herein, violated Mr. Washington's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

74.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Washington of his constitutional rights.

75.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Washington sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FIRST AMENDMENT RETALIATION

76.    Mr. Washington repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

77.     Defendants violated the First and Fourteenth Amendments by arresting and prosecuting Mr. Washington with a retaliatory motive relating to his protected activity of filing of a civil rights claim relating to the 2012 wrongful arrest.

78.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to cause Mr. Washington concrete injuries, which Mr. Washington did in fact suffer.

79.     Defendants' unlawful actions also sought to chill his and the public's willingness to engage in protected activity going forward.

80.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Washington sustained the damages hereinbefore alleged.

## THIRD CLAIM
## FALSE ARREST

81.     Mr. Washington repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

82.     Defendants, by their conduct toward Mr. Washington alleged herein, violated Mr. Washington's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

83.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Washington of his constitutional rights.

## FOURTH CLAIM
## MALICIOUS PROSECUTION

84.     Mr. Washington repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

85.     Defendants violated Mr. Washington's right under 42 U.S.C. § 1983 to be to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

86.     Defendants' prosecution of Mr. Washington constituted malicious prosecution in that there was no basis for Mr. Washington's arrest, yet Defendants continued with malice with the prosecution, which was resolved in Mr. Washington's favor.

87.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Washington of his constitutional rights.

88.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Washington sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## FAILURE TO INTERVENE

89.     Mr. Washington repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

90.     Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

91.     Accordingly, Individual Defendants who failed to intervene violated the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

92.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Washington of his constitutional rights.

93.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Washington sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## MONELL CLAIM

94.     Mr. Washington repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

95.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or

rule of the respective municipality/authority, which is forbidden by the United States Constitution.

96.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Washington's rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

97.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

98.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Washington's safety, well-being and constitutional rights.

99.     The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Washington as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Mr. Washington respectfully request the following relief:

A. An order entering judgment for Mr. Washington against Defendants on each of their claims for relief;

B. Awards to Mr. Washington for compensatory damages against all Defendants, jointly and severally, for their violation of the First, Fourth, Fifth and Fourteenth Amendment rights of Mr. Washington, the amount to be determined at jury trial, which Mr. Washington respectfully demands pursuant to FRCP 38;

C. Awards to Mr. Washington of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Mr. Washington, the amount to be determined at jury trial, which Mr. Washington respectfully demands pursuant to FRCP 38;

D. Awards to Mr. Washington of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:      November 12, 2015
            New York, New York

                              _____/s_____

                              Ryan Lozar
                              305 Broadway, 9th Floor
                              New York, New York 10007
                              (310) 867-1562
                              ryanlozar@gmail.com

                              *Attorney for Plaintiff*